UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD JOHNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 4:19 CV 3215 CDP |
| | ) |
| ANNE L. PRECYTHE,[1] | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Missouri State prisoner Ronald Johnson's petition for writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, I will deny the petition.

## Procedural History

Johnson is currently incarcerated at ERDCC pursuant to a judgment and sentence of the St. Louis City Circuit Court. On August 10, 2010, Johnson pleaded guilty to first-degree murder, first-degree robbery, and two counts of armed criminal action. On December 19, 2012, the circuit court sentenced Johnson to life

---

[1] Petitioner is currently incarcerated at the Eastern Reception, Diagnostic, and Correctional Center (ERDCC) in Bonne Terre, Missouri. As of the date of this Memorandum and Order, the Warden position at ERDCC is listed as vacant. *See* Missouri Dep't of Corr. Warden Listing, https://doc.mo.gov/facilities/adult-institutions/warden-listing (last visited February 7, 2023). Because petitioner is challenging a judgment under which he is currently in custody and not one subjecting him to future custody, the Director of the Missouri Department of Corrections, Anne L. Precythe, is substituted as the proper party respondent in this action. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, *Advisory Committee Notes*.

imprisonment without the possibility of probation or parole on the murder charge, and three concurrent ten-year terms of imprisonment on the remaining charges. At the time Johnson filed this § 2254 petition, the ten-year sentences had expired.

On June 6, 2013, Johnson filed a motion for post-conviction relief under Missouri Supreme Court Rule 24.035, which was denied after an evidentiary hearing. On transfer from the Missouri Court of Appeals, the Missouri Supreme Court affirmed the denial of post-conviction relief. *Johnson v. State,* 580 S.W.3d 895 (Mo. banc 2019). The United States Supreme Court denied certiorari. *Johnson v. Missouri*, 141 S. Ct. 90 (2020).

Johnson timey filed this habeas petition on December 5, 2019, raising three claims for relief:

> 1)  Ineffective assistance of counsel – that plea counsel coerced Johnson to plead guilty to first-degree murder for a sentence of life without parole by threatening that the death penalty would apply if he were to go to trial, when he was ineligible for the death penalty because of his intellectual disability;
>
> 2) Ineffective assistance of counsel – that plea counsel failed to challenge the sufficiency of the court-ordered mental examination and failed to request an independent examination; and
>
> 3)  That the trial court erred in finding Johnson competent to plead guilty.

In response, respondent contends that I must defer to the Missouri Supreme Court's determination that the claims are without merit and deny the petition.

### Standard of Review

Federal habeas relief is available to a State prisoner "only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See also Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990).

In order to obtain Federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the Federal constitutional dimensions of the claim in State court in accordance with State procedural rules. *Duncan v. Henry,* 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoting *Gilmore v. Armontrout,* 861 F.2d 1061, 1065 (8th Cir. 1988)). Where the State court adjudicated a claim on the merits, Federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 379 (2000). The source of doctrine for such clearly established Federal law is limited to the United States Supreme Court. *Id.* at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially

indistinguishable facts.  *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001).  A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  Merely erroneous or incorrect application of clearly established Federal law does not suffice to support a grant of habeas relief.  Instead, the State court's application of the law must be objectively unreasonable.  *Id.* at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).  Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, a Federal court must presume that State court findings of basic, primary, or historical facts are correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).  Erroneous findings of fact do not *ipso facto* ensure the grant of habeas relief.  Instead, the determination of these facts must be unreasonable in light of the evidence of record.  *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The Federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying

state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). To obtain habeas relief from a Federal court, the petitioner must show that the challenged State court ruling "rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). This standard is difficult to meet. *Id.*

## Jurisdiction

Federal courts have jurisdiction to consider habeas petitions from persons who are in custody in violation of the Constitution, laws, or treaties of the United States. The habeas petitioner must be in custody under the conviction or sentence under attack at the time he brings his petition. *Maleng v. Cook*, 490 U.S. 488, 491 (1989). Where a sentence imposed on a conviction has fully expired at the time the petition is filed, the habeas petitioner is no longer "in custody" under that conviction. *Id.* at 491-92.

To the extent Johnson's habeas petition can be read to assert claims challenging convictions other than for first-degree murder, he was no longer in custody under those convictions when he filed this habeas petition because his sentences therefor had expired. I therefore have no jurisdiction to entertain any claims to the extent they may challenge those convictions. *Maleng*, 490 U.S. at 491-92. *See also Mays v. Dinwiddie*, 580 F.3d 1136 (10th Cir. 2009); *Sweet v.*

- 5 -

*McNeil*, 345 F. App'x 480 (11th Cir. 2009).

## Assistance of Counsel

Grounds 1 and 2 were properly raised and adjudicated on their merits in State court. I therefore address the claims on their merits, exercising limited and deferential review of the underlying State court decision as required by the AEDPA.

A.   Ground 1

In Ground 1, Johnson claims that his plea counsel was ineffective by coercing him to plead guilty under threat of the death penalty if he were to go to trial and be convicted of first-degree murder when, in fact, he was ineligible for the death penalty because of his intellectual disability.[2] Johnson raised this claim in his post-conviction motion, and, on appeal of its denial, the Missouri Supreme Court affirmed the motion court's denial of relief on the claim.

At the time the Missouri Supreme Court adjudicated Johnson's claim, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To be entitled to Federal habeas relief on his claim of

---

[2] Under Mo. Rev. Stat. § 630.006, effective August 28, 2014, "[t]he phrases 'mentally retarded' and 'mental retardation' shall be referred to as 'intellectually disabled' and 'intellectual disability,' respectively." Johnson was diagnosed with "mild mental retardation" before enactment of this statute. In this Memorandum and Order, I will use the terminology prescribed by the statute unless addressing Johnson's specific diagnosis.

- 6 -

ineffective assistance of counsel, Johnson must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. *Id.* Johnson must satisfy both components of the *Strickland* test. Accordingly, if he makes an "insufficient showing" on one component, I am not required to address the other. *Id.* at 697. The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistant of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Courts must "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* at 689. Johnson bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In addition, a presumption exists that counsel's conduct "might be considered sound trial strategy." *Id.* at 688. To establish prejudice, Johnson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, Johnson must show that there exists a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial. *Tinajero-Ortiz v. United States,* 635 F.3d 1100, 1103 (8th Cir. 2011).

A review of the record, as summarized by the Missouri Supreme Court, shows that in early March 2008, Johnson and Cleophus King, Johnson's co-defendant, murdered Johnson's acquaintance at King's home by strangling, beating, and stabbing him using multiple knives, other weapons, and an electrical cord. A neighbor's surveillance system captured the murder on an audio recording. Johnson and King then stole the victim's wallet, keys, and vehicle and drove to Illinois where they dumped the victim's body, which they had wrapped in a sheet and duct tape. Johnson and King then went to the victim's home and stole more items, and later made purchases with the victim's credit cards. Johnson was arrested within days of the murder, and he confessed to all the above actions during a police interview. Both Johnson and King were charged with first-degree murder punishable by death or imprisonment for life without eligibility for probation or parole. Mo. Rev. Stat. § 565.020.2.

The State offered Johnson a deal whereby it would not seek the death penalty against him if he cooperated against King and pleaded guilty to a sentence of life without probation or parole. Johnson accepted the deal and pleaded guilty on August 10, 2010. Sentencing was deferred until after King's trial. After a series of delays caused by King's and Johnson's intercommunications in jail,

King's threats to kill the prosecutor, and Johnson's purported change of heart about testifying against King, the State moved to withdraw Johnson's guilty plea and reinstate the death penalty option.  The court denied the State's motion in June 2012.  Johnson was sentenced in December 2012 to life in prison without the possibility of probation or parole.[3]

Johnson contends that his attorney threatened that if he did not take the State's deal, he could be sentenced to death if he went to trial and was convicted. Johnson argues that this threat constituted ineffective assistance because his intellectual disability rendered him legally ineligible to receive the death penalty. He contends that he pleaded guilty because of this threat and would have insisted on going to trial if he had known that the death penalty did not apply to him.

The Missouri Supreme Court applied the test articulated in *Strickland* to Johnson's claim and concluded that his attorney did not provide ineffective assistance.  First, the court noted that under Missouri law, "[u]ntil a capital defendant is adjudged to be intellectually disabled, he remains eligible for the death penalty unless the State waives the death penalty." *Johnson*, 580 S.W.3d at 903 (citing Mo. Rev. Stat. §§ 565.001.1, 565.020.2 (2000)).  The State did not waive the death penalty here.  Because "the factfinder must affirmatively find a

---

[3] Review of Missouri Case.net shows that King pleaded guilty to all charges in May 2013 and was sentenced to life in prison without probation or parole. *See State v. King*, Case No. 0822-CR-01472-01 (Mo. 22nd Jud. Cir. Ct. 2013).

defendant is intellectually disabled," and there had been no such factfinding here, the court found that Johnson remained eligible for the death penalty. *Id.* at 902-03 (citing *State v. Johnson*, 244 S.W.3d 144, 150 (Mo banc 2008)).

> Importantly, an attorney has an obligation to inform his client of the possible range of punishment of the offense to which he pleads. Because the trier of fact never adjudicated Johnson to be intellectually disabled, his counsel was, in fact, required to inform him that he was eligible to receive the death penalty upon conviction of murder in the first degree.

*Id.* at 903 (internal quotation marks and citation omitted). Because counsel had a duty to inform Johnson that he could receive the death penalty if he rejected the State's offer and went to trial in the circumstances of the case, he did not act deficiently in informing Johnson of that possibility.

The Missouri Supreme Court's decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established Federal law. 28 U.S.C. § 2254(d)(1). Nor has Johnson shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The claim raised in Ground 1 of Johnson's habeas petition is denied.

2.  Ground 2

In his second ground for relief, Johnson claims that counsel was ineffective in failing to challenge the sufficiency of the court-ordered mental examination and

in failing to obtain a second, independent examination. Johnson contends that a properly conducted examination would have shown that he was not competent to proceed to trial or enter a guilty plea because of his intellectual disability. Johnson raised this claim in his post-conviction motion, and, on appeal of its denial, the Missouri Supreme Court affirmed the denial of relief on the claim.

    A defendant is competent to stand trial if he has sufficient ability to consult with his lawyer and has a rational and factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *State v. Tokar*, 918 S.W.3d 753, 762 (Mo. banc 1996). Under Mo. Rev. Stat. § 552.020.2, a judge must order a mental examination of a defendant if the judge has reasonable cause to believe the defendant lacks the mental capacity to proceed. Here, the judge ordered a mental examination under § 552.020.2, the findings of which showed that Johnson did not suffer any mental disease or defect and that, while he had been diagnosed with mild mental retardation versus borderline intellectual functioning, his intellectual functioning was not severe enough to qualify as a mental disease or defect limiting his ability to understand the proceedings against him or to assist in his own defense. In the report, filed with the court in March 2010, Dr. Michael Armour of the Department of Mental Health concluded that Johnson was competent to proceed and could appreciate the nature, quality, and wrongfulness of his conduct. (Resp. Exh. F, ECF 12-1.) Johnson pleaded guilty in

August 2010.

An evidentiary hearing on Johnson's post-conviction motion was held in February 2017 at which Johnson, his plea counsel, and two psychologists presented by post-conviction counsel testified.  As to why he did not request a second competency evaluation, Johnson's plea counsel testified that despite Johnson's school records and Dr. Armour's report that showed a diagnosis of mild mental retardation versus borderline intellectual functioning, his personal interactions with Johnson did not cause him to suspect that Johnson was intellectually disabled. Counsel testified that when the report was filed, he had already represented Johnson for two years and that, during that time, he and Johnson were able to communicate clearly, Johnson was able to articulate his position on various things associated with his case, and Johnson wrote several letters from which counsel did not perceive an intellectual disability.  Additionally, counsel testified that during his several years as a criminal defense lawyer, he had reviewed many mental examinations conducted by the Department of Mental Health and never had any reason to question the quality of a report or the ability of the examiner.  While he had requested independent evaluations in other cases, he did not believe it was necessary in Johnson's case because the quality of his personal interactions with Johnson did not support such a request.  (Resp. Exh. B, ECF 11-2 at pp. 28-51.)

*Strickland* requires that in order to "eliminate the distorting effects of

hindsight," counsel's performance must be examined from his perspective at the time of the alleged error.  466 U.S. at 689.  At the time of the alleged error here, that is, between March and August 2010, counsel had represented Johnson for two years and had several communications with him and opportunities to observe his interactions and communications with others.  He was also familiar with the evaluations of State examiners and the nature and quality of their work.  Based on his observations and experience, counsel did not believe a second evaluation would yield a different result.  While post-conviction counsel presented the opinions of other psychologists that the State examination conducted seven years earlier was subpar and that Johnson was intellectually disabled and unable to meaningfully assist in his defense (Resp. Exh. B, ECF 11-2 at pp. 4-28, 51-70), it cannot be said that Johnson's counsel acted unreasonably in not requesting a second examination in 2010 given the quality of his own interactions with Johnson that he had had at the time for two years.  Indeed, as recognized by the United States Supreme Court, "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina v. California,* 505 U.S. 437, 450 (1992).

    The Missouri Supreme Court concluded that the evidence of record showed that counsel did not render ineffective assistance in declining to seek a second competency evaluation.  This conclusion was neither contrary to nor involved an unreasonable application of clearly established Federal law.  28 U.S.C. §

2254(d)(1). Nor has Johnson shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Because Johnson has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the claim raised in Ground 2 is denied.

### Competency to Proceed

In Ground 3, Johnson claims that the trial court erred in finding him competent to plead guilty. Johnson raised this claim in his post-conviction motion, and, on appeal of its denial, the Missouri Supreme Court affirmed the motion court's denial of relief on the claim.

At the time Johnson's conviction became final, the law was clearly established that a defendant "may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." *Cooper*, 517 U.S. at 354 (internal quotation marks and citation omitted) (alteration in *Cooper*). This competency standard also applies to one who is pleading guilty. *Godinez v. Moran,* 509 U.S. 389, 398 (1993).

As set out above, Dr. Armour with the Department of Mental Health concluded in March 2010 that Johnson did not suffer any mental disease or defect

and that, while he had been diagnosed with mild mental retardation versus borderline intellectual functioning, he was not intellectually disabled to an extent that limited his ability to understand the proceedings against him or to assist in his own defense. At the evidentiary hearing in February 2017, Johnson produced evidence that conflicted with Dr. Armour's findings:

> At the hearing on his postconviction motion, Johnson introduced evidence establishing he had an IQ of 63. Johnson also adduced expert testimony that tended to show, while he was capable of conversing with his attorney, he did not possess the intellectual capacity to meaningfully assist his attorney in his defense. On the other hand, Johnson's plea counsel testified Johnson was able to repeat and rephrase information he told Johnson, demonstrating Johnson understood the nature of the proceedings and could assist in his defense. Additionally, Dr. Michael Armour, a psychologist employed by the department of mental health, performed a competency exam on Johnson pursuant to § 552.020 and concluded he was competent to stand trial. The motion court found Dr. Armour was a proficient psychologist, whose exam was reliable[.]

*Johnson*, 580 S.W.3d at 904. The motion court also noted Johnson's testimony that "he spoke with his attorney a number of times, and that his attorney had explained to him and answered his questions and, also, [Johnson] had numerous conversations with the court, wrote the court letters, and the court answered any questions that [Johnson] had." (Resp. Exh. A, ECF 11-1 at hdr. p. 166.) The motion court determined that there was insufficient conclusive evidence provided by Johnson's experts to overcome Dr. Armour's conclusions and that there was insufficient evidence to overcome the evidence presented concerning Johnson's

competency to proceed. (*Id.* at hdr. p. 169.) The Missouri Supreme Court found that the motion court did not err in finding Johnson competent to plead guilty, given the evidence that Johnson was able to understand the proceedings against him and assist in his defense. *Johnson*, 580 S.W.3d at 904.

A State court's finding that a defendant is competent to proceed is a factual finding presumed to be correct in a Federal habeas proceeding. *Elam v. Denney*, 662 F.3d 1059, 1064 (8th Cir. 2011). "[A] competency determination involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'" *Wright v. Bowersox*, 720 F.3d 979, 984 (8th Cir. 2013) (quoting *Lomholt*, 327 F.3d at 752). Accordingly, the State court's finding that Johnson was competent to plead guilty is presumptively correct unless Johnson can show by clear and convincing evidence that the conclusion is not supported by the record. *Id.* Johnson has failed to make such a showing here.

As set out above, evidence before the motion court included Dr. Armour's report, expert opinion evidence from two psychologists presented by post-conviction counsel, testimony from Johnson's plea counsel, and the full record of the underlying proceedings. After hearing the evidence presented at the evidentiary hearing and upon reviewing the evidence already on file, the court

determined that Johnson had not lacked the mental fitness to proceed on his guilty plea.  All experts agreed that Johnson was diagnosed with mild mental retardation versus borderline intellectual functioning.  But Dr. Armour of the Department of Mental Health, who examined Johnson within months of his guilty plea, reported that even though Johnson had some cognitive limitations, he had adequate understanding of the proceedings, his options, and the consequences of his decisions.  Johnson's responses to Dr. Armour's detailed interview indicated that he understood the charges, the facts giving rise to them, and their consequences; understood the criminal proceedings against him and potential outcomes; appreciated his legal options; and displayed no evidence that he was unable to work with his lawyer.  (Resp. Exh. F, ECF 12-1.)  Johnson's expert witnesses, testifying seven years later, opined that Dr. Armour's evaluation was insufficient and that an independent evaluation conducted in 2014 yielded different results.  Upon questioning by the court at the evidentiary hearing, Johnson testified that he understood the proceedings as they happened and had no issues in communicating with the court during that time, which the court characterized as "quite a bit back and forth."  Johnson also testified that the court had answered his questions and addressed his issues during the proceedings as well.  (Resp. Exh. B, ECF 11-2 at pp. 78-80.)

      The weighing and resolution of conflicting evidence is left to the factfinder,

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and absent clear and convincing evidence sufficient to overcome the presumption of correctness given to State court findings of fact, I must defer to that court's resolution of conflicting evidence. The court was not constitutionally required to give the opinions of Johnson's experts more weight than the other evidence, which included Dr. Armour's competency evaluation conducted near in time to the guilty plea, the court's own observations of Johnson in court, the testimony of Johnson's attorney describing his communications with and observations of Johnson during consultations, and the quality of Johnson's communications with the court orally and in writing. *See Elam*, 662 F.3d at 1064.

On the evidence presented in the State court proceedings, I cannot find that the State court's decision was based on an unreasonable determination of the facts. Nor was the decision contrary to, or involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). The claim raised in Ground 3 is denied.

## Certificate of Appealability

Johnson has failed to make a substantial showing that he was denied a Federal constitutional right. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (for substantial showing, issues must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further

proceedings). I will therefore not issue a Certificate of Appealability on any of his claims.

Accordingly,

**IT IS HEREBY ORDERED** that Anne L. Precythe is substituted for Stanley Payne as proper party respondent in this action.

**IT IS FURTHER ORDERED** that petitioner Ronald Johnson's petition for writ of habeas corpus under 28 U.S.C. § 2254 [1] is denied.

**IT IS FURTHER ORDERED** that petitioner Johnson's motion for the appointment of counsel [17] and for a hearing on his motion to appoint counsel [18] are denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not issue in this action because petitioner Johnson has not made a substantial showing of a denial of a constitutional right.

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of February, 2023.